Case number 18-5676 United States of America v. Jankie Jackson. 18-6003 United States of America v. Peter Combs. Argument not to exceed 10 minutes for each defendant and 20 minutes for plaintiff. Mr. Gregory Sasse, you may proceed for the appellant. Thank you. Good afternoon, your honor. May it please the court, Greg Sasse for Jankie Jackson, as Laurie Nethro just said. The facts of this case are unusual. Following a second superseding indictment, charging Jackson with conspiracy to distribute and possession with intent to distribute five kilograms of cocaine or more and with money laundering, Jackson was presented with plea agreements. He rejected the first three. The first plea agreement to the magistrate judge was rejected by her for failure of the stipulated facts to meet all of the elements. Jackson ultimately pled guilty with all the required acknowledgments. Did you do it? Can they prove it? Had enough time, etc. And a report with recommendations was filed without objection. At sentencing, Jackson raised no objections. The trial court entered judgment and more than six months later, Jackson filed a pro se motion for leave to file a late notice of appeal, followed shortly by another similar motion, this time with leave to file an affidavit in support. In the affidavit, you may be getting there, but I just just for my own information, are we treating this as a direct appeal of Jackson's sentence? Or is this really more in the nature of a habeas action under section 2255? I was getting there. Carry on. No, I that's it. That's all right. I will jump to that. I would agree. It is easiest to construe his motions as an action pursuant to 2255. There's ample precedent that even an informal pro se letter can be considered and is considered as a 2255. That's the easiest way to approach the problem. The other way is not easy. It's a motion for reconsideration with timeliness issues, which have probably are excusable due to ineffective assistance, but we don't need to go there. It can be treated simply as a habeas. Jackson's affidavit stated grounds for his motion, which were that he was of the opinion that leadership did not apply and the enhancement pursuant to title 21 section 851 did not apply, and further, that his attorney had promised him to file a timely notice of appeal, but had failed to do so. The district court transmitted Jackson's motions as a notice of appeal to this court. The government did not respond. This court issued an order requiring Jackson to state why his appeal was not to be considered untimely. And despite the Jackson's motions in the interim. This means that essentially we have facts which jump out of the record, which are irreconcilable with a constitutionally sufficient, i.e. a knowing and voluntary plea in sentencing. Jackson has states that he believed that certain things did not apply enhancements, and his attorney failed to raise them. The record establishes multiple levels of ineffective assistance of counsel by his counsel. Number one, the procedural default of the notice of appeal, and number two, the default to raise leadership and the 851 enhancement at plea and judge doctoring. I certainly would be in favor of your advising your client that he could file a 2255. But we normally don't touch those on a direct appeal because there hasn't been a hearing on the question of ineffective assistance of counsel in the district court. I mean, I don't know that I haven't read every word of this record, but I don't think the question of ineffective assistance was brought up below and there hasn't been, you know, the council hasn't had a time to respond to that. With trial counsel, I, it seems to me that we are not in a position to treat this as a 2255 at this point. I understand the court's concern. My response is that we have the equivalent of a hearing by virtue of the default judgment and the ruling by the district court. And yes, there needs to be a hearing, and there should be a hearing, but we would request that Jackson's conviction and sentence be vacated and the whole case be remanded for a new hearing for clear trial and resentencing where everything can be threshed out and clarified. Well, just to follow up on Judge Daughtry's question, isn't it better for your client to have essentially two bites at the apple to have his direct appeal and then have his 2255 if needed? Well, his direct appeal is essentially meaningless because he can't really raise much of anything. All he's raising now is the 2255, which is in the record, and that's the only thing he can raise. I thought he had some sentencing, I thought he had some sentencing enhancements that he was challenging. Well, true, yes, he had that, but they have not been developed because they were never developed at the district level. I was not trial counsel, and essentially nothing was done. Any facts he has to demonstrate that leadership should not have applied should have been raised, but were not. And this is part of the ineffective assistance of counsel that I was referring to, which runs throughout this entire case. Counsel, I thought that the leadership enhancement had been conceded at sentencing. Now, in a later hearing, you may want to bring that as an instance of ineffective assistance of counsel, but it was conceded on the record. Well, nothing was challenged on the record, so in effect, everything was conceded, but it shouldn't have been. Wait, I thought there was an actual concession. Let me look. You go ahead and let me look. Thank you. Sure, sure. Essentially, we have ineffective assistance of counsel running throughout this case, and we have a defendant who had issues with the plea and sentencing, which were never raised, which his attorney apparently promised to raise. I was not his trial attorney, and I would not be on a remand because I'm not even admitted to the District of Kentucky. Counsel, can I ask one question? The motion for the District Court of Jurisdiction to grant the motion for leave after the case is already in front of us on appeal? Yes, by virtue of the fact that any filing which can be construed in any way as a motion for reconsideration reinvests a district court with jurisdiction to decide that one motion, nothing else, and that can be decided even though the case is on appeal. It's kind of a that's the law, and so yes, it should have been. I mean, there was jurisdiction, but again, what I would refer to is that there has been a finding by the district court, in effect, that his motion had sufficient basis to be granted, and that basis included the objection to the sentencing enhancements, and essentially that's where we are, and I see that as not being reconcilable with a knowing and voluntary plea and sentencing, and so we would request remand for a new plea and sentencing. Right, and counsel, did you reserve any time for rebuttal? I did reserve three minutes, so you may have the unfortunate experience of hearing me again, or you may not. Okay, I don't see the clock, so I'll have to depend on Ms. Netherer to tell me whether you have more time. I don't see it either. Thank you. Judge Daughtry, is he out of time? Yeah, yeah, I'm happy to signal if that helps when that happens. It does, because I don't see anything here. Thank you, and you'll have your full rebuttal, and perhaps Judge Daughtry will come back to you with her question regarding the record. Thank you. We'll now go to Mr. Combs, counsel. Thank you, your honors. May it please the court, I'm excluded on behalf of co-appellant Peter Combs. Your honor, I am here today asking you, indeed, that you vacate the sentence finding of a trial which Mr. Combs was a career offender. In addition, of course, we're asking that you remand this matter to the Eastern District of Kentucky for resentencing. Three points I would like to discuss follow. First, it would appear that both the U.S. attorney and I agree that Kentucky revised statute 218A.14131A, the statute which prohibits trafficking in a controlled substance, is a statute that this court should analyze using the categorical approach. Second, in applying the categorical approach, this statute, statute prohibiting trafficking in a controlled substance, criminalizes more behavior, that is the transfer of a controlled substance, and that which is included in the definition of a controlled substance offense, the United States Sentencing Guidelines 4B1.2b. Therefore, that conviction cannot be used as a predicate offense for the career offender enhancement. Counsel, can we consider the terms of the Controlled Substances Act itself? Yeah, and I know that the U.S. attorney did, of course, raise that in their response, and then again with supplemental authority. Obviously, the sentencing guidelines themselves have no definition without going to the notes, which we would say HAVIS does not permit. In going to, you know, the statute, the U.S. code, we don't see where the court must go there, but it does seem to be a place for the court to go, and the court has, this court has chosen to go there in other cases since HAVIS. We will concede that. Is there a reason why we wouldn't follow Garth and Thomas in the other cases and look to the CSA here? Again, it's not an issue where I think that, I think regardless as to whether or not you look at the CSA, it doesn't affect what would happen and how this court would rule. So again, there's no strict objection in looking to the Controlled Substances Act in this situation. Finally, the third point that I do want to raise, and it may not come until a rebuttal, is that why does this matter? Yeah, and why does this matter? Well, because we have an enhancement applied to a 54-year-old man at the time of sentencing, Peter Combs, who because he was deemed a career offender, when we would argue that he should not have been, he is very likely facing a de facto life sentence when without the career offender, he'd be looking at three to four year sentence. With that, I'd like to turn to the categorical approach. Your Honor, what we're looking, Your Honor, is what we are looking at, again, is either by Statute 218A.1413. That statute says in Subsection 1A, a person is guilty of trafficking in a controlled substance when he or she knowingly and unlawfully traffics. Then goes on to describe, of course, the various substances. That is the code. That is the provision that we are looking at. We then go on to look at the definition of traffics, which is defined in 218A.010, Section 57. It is there that we do get a variety of methods in which the trafficking can occur, the element of trafficking can occur. And what are those methods? Well, manufacture, distribute, dispense, sell, transfer. Those, again, are not elements. Those are methods of how a Kentucky would prove the offense of 218A.1413. But, Mr. Kidd, isn't transfer a part of the definition of traffic under the Kentucky statute? And how would that affect your argument? Indeed, transfer is. As a matter of fact, we would say that's the least culpable aspect of that statute, under the Kentucky statute. And I think I know where the court is going, because the court, in looking at delivery under the CSA, it does mention transfer. Yeah, and, of course, you get to deliver by coming through. Judge Daughtry, I'm sorry, did you have a question? I saw you light up. Well, you've identified, you've identified, you've certainly identified the issue that both Judge Donnelly and I have asked about. What's your best answer? Or the CSA? Well, my best, yes, my best answer is that, well, for one, transfer, transfer also has a definition, the Kentucky revised code, revised statute. We don't have that in the CSA. Transfer is not defined in the CSA. And I would say that the statute, or how transfer is defined underneath Kentucky law, is a bit idiosyncratic. Yeah, and how is it defined? Again, it is defined as to dispose of. So, it means to dispose of a controlled substance to another person without consideration, and not in furtherance of commercial distribution. So, what we have, we have a definition of transfer here. We don't have one in the CSA. And that is, I'm saying, idiosyncratic. We don't have a meaning of dispose of provided in the Kentucky statute. But if we were to take the common meaning, and by that, I mean just looking at what the Merriam-Webster says in regard to dispose of. And the Merriam-Webster says to dispose of means to get rid of. Okay. So, under that definition, let's say an individual in possession of a controlled substance or some substance could just hand that off to somebody at a party, no consideration, just sharing. That would meet the definition of transfer under the Kentucky statute, but certainly not under the Controlled Substances Act. Well, I think there could be even stranger or less culpable conduct than that, Judge Donald. I think even when you say dispose of, or to, you know, get rid of, as Merriam defines, you know, dispose of, I think it means you can dispose of it in the trash. That will eventually come into the possession of a refuse worker. To me, that indeed does, is prohibited by the Kentucky statute. Okay. So, the rest of my time for rebuttal. Thank you. Thank you. Thank you very much. We'll now hear from the appellee. Good afternoon, Your Honor, and may it please the court. Amanda Harris on behalf of the United States. I'll start with Mr. Jackson's claims and then address Mr. Combs' claims. This court should consider Mr. Jackson's filings as a direct appeal, as though it were timely filed, and affirm his conviction and sentence. That outcome would afford Mr. Jackson the ability to then file a motion under 28 U.S.C. 2255 in the district court and raise any claims of ineffective assistance of counsel that he chooses. The district court, not this court, is in the best position to determine whether a hearing is necessary, and if a hearing is necessary, to hold that hearing and make the rulings as is appropriate with regard to all ineffective assistance of counsel claims. I would note, Your Honor, that this court, in fact, is foreclosed under the Ferguson case, which is cited in our brief, from considering claims of ineffective assistance of counsel raised for the first time on direct appeal. Mr. Jackson didn't raise any claims of ineffective assistance of counsel in his pro se filings, and this court can't simply reconstruct those filings as motions filed under 28 U.S.C. 2255. The Moody case in our, also in our brief, indicates as much. This court generally doesn't just sort of refashion pro se filings. Instead, the district court, as it did here, makes the determination of what those filings are, and the district court believed that Mr. Jackson was asking for a notice of appeal, and that's what he has an opportunity to do before the court currently. So, going back to the question that Judge Riedler asked opposing counsel, did the district court have jurisdiction to make any ruling once the case had been appealed to our court? No, Your Honor, we don't believe the district court did have jurisdiction under the unique facts of this case. It has nothing to do with Rule 4, of course, because that's a claims processing rule. The reason that the district court didn't have jurisdiction is because the this court, in fact, had issued its show cause order. The parties had already briefed the issue, and then the district court issued its order expanding the time, but because Rule 4 is a claim processing rule, the court here doesn't really need to reach a decision with regard to whether the district court had jurisdiction because this court may always hear direct appeals so long as it doesn't invoke Rule 4. Of course, the court can invoke Rule 4, and as a matter of government invokes Rule 4 when there's a defendant appealing, and here the government is just submitting that the cleanest way to resolve this case is to not invoke Rule 4, consider this as a direct appeal, and as Mr. Jackson concedes, there really isn't much to raise on direct appeal, and therefore affirm his conviction and sentence, which would then start the clock for when Mr. Jackson can file a 2255 in the district court, depending on whether he seeks cert in the Supreme Court, and that really does provide... So can I ask you, just to follow up on that, if we were to do that, should we vacate the district court's decision on the motion for leave that was entered after the case was already on appeal? Is there any impact from that decision? Is there any prejudice to the government by leaving that decision on the books? I'm not sure that there is any prejudice because essentially if the court considers this as a direct appeal, then the defendant has gotten his ability to file a direct appeal. I don't think it has any sort of precedential authority if the court doesn't rule on that decision. If the district court did have jurisdiction to issue an order, for example, if a different factual pattern had applied, the government would have had to file a notice of appeal in order to challenge the district court's decision. That's from the Birch case we cite in our brief. Do you agree with your friend on the other side that the district court had jurisdiction to and that district courts have jurisdiction to address narrow motions for reconsideration? No, Your Honor. This couldn't be construed as a motion for reconsideration. First, the district court didn't construe it as much. Again, that would call for this court to start reconstruing motions that the district court didn't construe. But regardless, there is no such thing as a motion to reconsider a sentence. We cite cases to that effect in our case in 2006. There is no such thing as a motion to reconsider a sentence. What if you construed that as a motion to reconsider a ruling on an issue within the sentencing context? Would that make a difference? For example, a motion to reconsider the application of a particular guideline range. That can't be reconsidered? I don't believe that it can, Your Honor. The Dodge case is pretty clear that the district courts cannot reconsider sentencing issues because Section 3582 limits the district court's authority. There's only a limited set of circumstances under which a district court can reconsider sentencing issues. But the court doesn't have to worry about sort of how, again, if this court simply construed Mr. Jackson's appeal as a direct appeal, which the government isn't challenging so long as it's construed as a direct appeal, this court doesn't have to worry about what the district court was doing or anything to that effect. It simply must affirm the defendant's conviction and sentence. And then, again, that's what starts the clock for Mr. Jackson to be able to file a motion under 28 U.S.C. 2255 raising whatever ineffective assistance of counsel claims that he chooses to raise. And he simply just didn't raise those in his pro se filings in the district court. And so the court may not now consider them here. The court doesn't have any authority to consider them under its case law. And so the court can't remand for a hearing to address ineffective assistance of counsel claims that Mr. Jackson never raised in the first place. But again, that doesn't preclude him from raising them at a later date so long as he does so within the time prescribed under 2255. I just wanted to briefly address Judge Daughtry's question regarding sentencing. The defense counsel at sentencing did affirmatively waive his challenges to these two sentencing issues at record 370 pages 1758 through 59. And then at 1794, counsel said he didn't object to his leadership role and, quote, couldn't have in good faith objected to the leadership role. That's an affirmative waiver of the sentencing issue as it relates to the leadership role. And as it relates to his prior predicate conviction, counsel said his conviction for marijuana was, quote, a qualifying conviction under the law. Again, that's at record 370 around 1794 and 1758 through 1759. And that's why at least on direct appeal, Mr. Jackson just doesn't have any claims to raise in this court should affirm his conviction and sentence and all of those ineffective assistance of counsel claims can be addressed in the 2255 proceedings. So you say that this court should properly characterize Mr. Jackson's filing here as a we believe that the court is precluded from construing these motions as 2255 motions. That's because, again, the district court did not construe them as motions under 2255. And this court in the Moody case cited our brief said that the Sixth Circuit can't simply reconstrue pro se filings as something else on appeal. And also because, again, Mr. Jackson simply didn't raise all of these ineffective assistance of counsel claims in the district court. And the Ferguson case cited in our brief precludes this court from considering claims of ineffective assistance of counsel raised for the first time on direct appeal. And so, again, Mr. Jackson's no worse off if the court simply affirms his conviction and sentence and then he can raise all of the claims he wants to and identify them more particularly in the district court. If the court has no further questions with regard to Mr. Jackson, I'll address Mr. Combs's claim. The district court here properly considered Mr. Combs as a career offender. And that's because the Kentucky Drug Trafficking Statute categorically qualifies as a controlled substance offense under the guidelines. The least culpable conduct under the Kentucky Drug Trafficking Statute, we do agree with Mr. Kidd, is the transfer of drugs. This court has already said that to define controlled substance offenses, this court ordinarily looks at the definition under the Controlled Substances Act, which specifically includes the transfer of controlled substances. And in fact, under federal law, the transfer of drugs, even without consideration, the sharing of drugs, if you will, is evidence of drug trafficking. We cited a couple of cases in our brief. The Washington case is a Fourth Circuit decision, but this court has adopted it and the Helton case. And so... What about as your friend on the other side said, disposing drugs in the trash can that are later than picked up by an unsuspecting garbage man? Well, there's two answers to that, Your Honor. The Kentucky Statute requires that it be transferred to another person. So I don't think dumping drugs in a trash can would constitute distribution to another person. But even if it did, under both Kentucky law and federal law, there's a mens rea requirement, and that's a knowing and unlawful transfer under Kentucky law and an intentional... A knowing and intentional transfer under federal law. That... The Atkins case, which is a Kentucky case cited in our brief, establishes that there's defenses for innocent possession and innocent distribution. That might mean the difference, for example, between someone holding on to drugs for an elderly parent that controlled substance prescription versus the government proving that instead of just holding on to the drugs for the elderly parent, they were holding on to them with the intent to distribute them to someone else, whether or not they were going to get paid. Okay, that... Well, that answers my question. So this... The hypothetical that I gave of somebody having a controlled substance and then just giving that to another individual for their use and consumption without receiving or expecting to receive anything in exchange, that would... That would be enough to satisfy transfer under the Kentucky Statute, but it would not trigger that under the Controlled Substance Act, at least not distribution. It would... It would probably amount to possession, but not possession with intent to do something. What do you say? Well, Your Honor, I disagree with that. I think that federal law does prohibit the transfer of drugs that wouldn't necessarily require payment for those drugs. Again, the Washington case, which is a Fourth Circuit decision, which the Sixth Circuit has adopted, says specifically that sharing is evidence of trafficking, that the physical giving over of drugs to another person is the transfer. Whether or not those are sort of on the outer limits of both federal and state law isn't the question. The question is whether there's any daylight between the two, and there's simply not, because the Controlled Substances Act would authorize prosecution under federal law as well. And to add to that, Your Honor, I'm not sure that the defendant has shown what he must in order to show that Kentucky defendants are actually being prosecuted on these very outer bounds of the Kentucky Statute. And that's because this court has said repeatedly, and as recently as the Garth decision, that there has to be a realistic probability that folks are being prosecuted for whatever sort of hypothetical crimes that are being posed. So some of these hypotheticals, such as disposing them in the trash can, that just simply isn't a realistic probability under Kentucky drug trafficking law. And that's because, again, there isn't any citation to any sort of case or example that that actually has been prosecuted in that manner. Your Honor, I think that it's already been discussed, but just to point out, again, very briefly, both the Thomas and the Garth cases, which were cited in the government's 28-J letter, essentially forecloses, I think, the defendant's primary arguments, which is that, I think, has shifted a little bit since those cases. But that sort of literal match, word for word, isn't what is required under the law. The controlled substance offense, instead, we're just asking whether the elements of the state offense or of the type that justify the inclusion of a controlled substance offense under the guidelines. We're not looking for a literal word for word match. And I'd also point out, again, just briefly, that the Havis decision, which has been discussed, I think, earlier in argument, doesn't have a lot of application here. And that's because the government isn't relying on any of the application notes in order to say that the Kentucky second-degree drug trafficking offense qualifies as a controlled that we look at the actual definition of controlled substance offense. And this court has said that to do that, we look to federal law. And that we've already discussed here, both federal and state law criminalize the transfer of drugs, regardless of whether anyone's actually being paid for the drugs. In fact, that would kind of make the selling of drugs an unnecessary term if the transfer of drugs didn't mean something else. And both statutes criminalize that type of conduct. If the court doesn't have any further questions, the government respectfully request that this court consider Mr. Jackson's claim as though it were direct appeal and timely filed in this court and affirm his conviction and sentence and affirm Mr. Combs' sentence. Thank you. Thank you. We'll now go to Mr. Sass for his Thank you very much, Your Honor. I don't know how much time I have. So I'm going to be very short. You have three minutes. Okay, thank you. The government has applied generic rules to a fact pattern it conceives is unique. We have a 2255 by operation of law. Pro se filings are broadly construed. And this filing challenges things that were done and asserts clear ineffective assistance of counsel. Any admissions were the result of that ineffective assistance of counsel. It's also a motion for reconsideration. This court is now considering the 2255, which has already been decided by default by the district court, which granted Jackie's motions. This which are inconsistent with a constitutional plea and sentencing, and we've been asked that his plea is sentence and conviction be vacated for reconsideration by the district court in light of whatever new counsel hopefully will want to raise. Thank you. Thank you, Mr. Kidd. Your rebuttal and you have three minutes as well, Your Honor. Thank you. In your honor's may please support. I wanted to briefly address some of the the arguments that were brought forth by the US attorney, the assistant US attorney. While I have not conceded that that the plain terms of definition of the controlled substance offense under the sentencing guideline should apply, I think this court very well could say that they should apply. And of course, that does not include transfer. But I'm saying that even if we do go to the controlled substance, controlled substances act, there is still a disconnect. The Kentucky statute still has an outer bounds that is not that is not criminalized by the federal law. Now, government made an argument that, well, there's an innocent owner exception or, you know, some sort of exception under Kentucky law. I think they also even mentioned that mens rea applies. In trying to figure out what mens rea would do in this situation, again, I am not a Kentucky attorney. I'm licensed as an attorney in Ohio. The mens rea of knowingly or unlawfully, you know, that seems to be a circular mens rea in regard to using unlawfully, you know, as a mens rea or conduct. In other words, you know, what's unlawful? Well, the transfer, what is it really? Yeah, so a circular argument. So what we have is we have transfer being defined as to dispose of to another person. And again, the US attorney does challenge the fact that in disposing something into the garbage, it is not a direct transfer to another person or disposal of to another person. It does fit the statute. It fits the statute by the plain language of the statute. Your honors, when we're looking at this, yes, of course, we're not supposed to come up with outlandish hypotheticals. But again, Kentucky is the one that has defined transfer in the way that it has. Based on that, this is not an outlandish proposal. It says disposal is prohibited. Based on that, again, just briefly, how does this affect Mr. Combs? Mr. Combs was 54 years old, we acknowledge he has a record. But what we have, we have somebody that was involved in a five-year conspiracy for approximately three or four months. Somebody that, you know, taking the highest level of drug amount attributed to him had 11 ounces. And because of this conviction, his sentencing guideline range went from 37 to 46 months to 188 to 235. Your honors, we would ask that you correct this injustice and that you reverse the finding of career offender enhancement and reverse the remand to the trial court. Thank you. Thank you, Mr. Kidd. I want to thank all counsel for their arguments. The matter is submitted and we will rule on the issues in due course.